THE CHARLES HUBBARD.

THE W. G. POLLOCK.

(Circuit Court of Appeals, Sixth Circuit. January 14, 1916.)

No. 2679.

1. COLLISION   73—MOVING AND ANCHORED VESSELS—PRESUMPTION OF FAULT.

A moving vessel, which comes into collision with one at anchor without fault of the latter, is presumptively in fault, and has the burden of proof to exonerate herself from liability by showing that it was not in her power to prevent the collision by adopting any practicable precautions.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 103; Dec. Dig.  73.]

---

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. Collision ⊖⟹71—Moving and Anchored Vessels—Fault.

In the absence of evidence that it was customary, a steamship anchored for the night cannot be held in fault for a collision with a moving vessel because she did not keep up steam, so as to be prepared to instantly move out of the way.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ⊖⟹71.]

3. Collision ⊖⟹71—Moving and Anchored Vessels—Fault.

A moving steamship, which, in attempting to reach a position in which to come to anchor at one side of the fairway in the St. Mary's River above the locks, was allowed to swing and come into collision with another vessel anchored in a proper place to one side of the fairway, *held* solely in fault. The failure of the officer in charge of the anchored vessel to release the anchor, when at almost the last moment the danger of collision became apparent was at most an error of judgment in extremis, and not a fault.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ⊖⟹71.]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in admiralty for collision by the Valley Steamship Company, owner of the steamer W. G. Pollock, against the steamer Charles Hubbard, the Great Lakes Steamship Company, claimant, with cross-libel against the Pollock. Decree for libelant, and claimant appeals. Affirmed.

Goulder, White & Garry, of Cleveland, Ohio, for appellant.

Holding, Masten, Duncan & Leckie, of Cleveland, Ohio, for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and CLARKE, District Judge.

CLARKE, District Judge. The appellee, as the owner of the steamship W. G. Pollock, filed its libel in the District Court, claiming that its ship was damaged by fault in the navigation of the steamship of the appellant, the Charles Hubbard, about 2 o'clock on the morning of May 2, 1913, at a point in St. Mary's River a few miles northerly from the canals at Sault Ste. Marie. The appellant filed a cross-libel, admitting that the collision occurred, but claiming that it was not occasioned by any fault of the Hubbard, and alleging various faults on the part of the Pollock. The trial court found that the collision was due to the sole fault of the Hubbard, and rendered judgment in favor of the appellee for the damage found to have been sustained by the Pollock.

The facts as developed by the testimony are that about 9 o'clock on the evening of May 1st the Pollock, upbound light, came to anchor about a half dozen miles above the Sault locks and about 250 feet on the American (or southern) side of the range line. Some time prior to the arrival of the Pollock, the steamship Siemens had anchored about 1,000 feet lower down the river than the Pollock and somewhat nearer to the range line. A short time prior to the collision complained of the steamship Stadicona, bound down and not far ahead of the Hubbard, came to anchor at a point about 1,000 feet above the

Pollock, somewhat on the Pollock's port bow and about 200 feet to the south of the range. It is fully established by the evidence that the night, though dark, was calm and clear; that the current running in the river at the time of the collision was not unusually strong, being about 2½ to 3 miles an hour, and that there was some ice running, but not sufficient to interfere with the control of the Hubbard.

Under these conditions the master of the Hubbard, downbound from Lake Superior, was advised, as he passed information stations upon the American and Canadian shores, a considerable distance above the place where the collision occurred, that there were several boats ahead of his, which made it necessary for him to find an anchorage to await his turn before going through the locks. Under these conditions, and with a full view and understanding of the positions of the Pollock and of the Stadicona, the master of the Hubbard decided to cross the bow of the Pollock and come to anchor inside of and not far from—perhaps somewhat astern of—the Stadicona. There was an abundance of unoccupied water in the immediate vicinity, where the Hubbard could have been anchored without coming near to the Pollock; but her master had a legal right to select his own place to anchor, and no serious criticism is made of the position which he selected. It is the all but uncontradicted testimony that the Pollock, the Siemens, and the Stadicona were all in a usual and proper place of anchorage.

The master of the Hubbard testifies that, while there was something of a haze, he saw the lights perfectly of all the ships involved in the consideration of this case, and understood and fully appreciated the positions in which they were lying as he approached from the north. The Pollock had come to anchor about 9 o'clock the night before, and as the Hubbard approached her she had all required lights properly burning, her first mate was on watch in the pilot house, the wheelsman was on the main deck, and a watchman was forward in the bow. When the Hubbard came to a point on the range about opposite the Stadicona, and so about 1,000 feet from the Pollock, her master attempted, by dropping her port anchor, to come around across the bow of the Pollock, so that he might anchor somewhat astern of the Stadicona. It was in the progress of this maneuver that the Hubbard collided with the starboard bow of the Pollock.

[1] Upon this appeal, the appellant assigns four claims of error on the part of the trial court. The first error claimed is in holding that the fault of the Hubbard was the sole cause of the collision. The navigating officers of the Hubbard admit that they saw the Pollock and neighboring ships and fully understood their relative positions before the maneuver was commenced which resulted in the collision. There was, as we have said, nothing so unusual in the weather, and nothing so unusual in the current of the river and the presence of ice in it as to affect the navigating of the Hubbard, and her officers say that she was in all respects in good working condition. Since the testimony shows beyond substantial dispute that the Pollock was anchored in a proper place, and that the officers of the Hubbard saw her lights and realized what her position was, in the language of the Su-

preme Court, we are not called upon to inquire wherein the Hubbard was not managed with proper nautical skill.

"Such inquiries are superfluous where the collision was caused by a vessel having the power to move or stop at pleasure in a channel of sufficient breadth, without any superior force compelling her to the place of collision." "The fact that in these circumstances the steamboat did collide with the barge [anchored Pollock] is conclusive evidence that she was not properly managed, and that she should be condemned to pay the damages caused by the collision." The Granite State, 3 Wall. 310, 18 L. Ed. 179.

To the same effect is The Virginia Ehrman and The Agnese, 97 U. S. 309, 24 L. Ed. 890, where the Supreme Court says:

"Vessels in motion are required to keep out of the way of the vessel at anchor, if the latter is without fault, unless it appears that the collision was the result of inevitable accident; the rule being that the vessel in motion must exonerate herself from blame, by showing that it was not in her power to prevent the collision by adopting any practicable precautions."

To precisely the same effect is The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943, where, after detailing circumstances strikingly similar to those prevailing at the time of the collision complained of in this case, the Supreme Court, speaking through Justice Brown, says:

"The circumstances above detailed raise a presumption of fault on the part of The Oregon, and the burden of proof is upon her to exonerate herself from liability."

And again (page 197 of 158 U. S., page 809 of 15 Sup. Ct., 39 L. Ed. 943):

"Where one vessel, clearly shown to have been guilty of a fault adequate in itself to account for the collision, seeks to impugn the management of the other vessel, there is a presumption in favor of the latter, which can only be rebutted by clear proof of a contributing fault. This principle is peculiarly applicable to the case of a vessel at anchor, since there is not only a presumption in her favor, by the fact of her being at anchor, but a presumption of fault on the part of the other vessel, which shifts the burden of proof upon the latter."

The collision under discussion was obviously enough the result of a mistake in the judgment of the master of the Hubbard in not commencing to turn his vessel sooner than he did when he decided to cross the bow of the Pollock, and there was no reason in the situation why he might not have commenced that maneuver at a sufficient distance from the Pollock to have avoided any possibility of collision with her, and therefore under the authorities cited, the claim that the trial court erred in holding that the Hubbard was at fault in causing the collision cannot be sustained.

Second. The appellant assigns error on the part of the trial judge in refusing to hold that the Pollock was at fault in anchoring improperly in the sailing course of steamers. This claim is wholly unsupported by the testimony and cannot be allowed.

[2] Third. Error on the part of the trial court is claimed in refusing to hold that the Pollock was at fault, in that, being improperly anchored, she failed to maintain a competent and sufficient lookout. Our finding that the Pollock was not improperly anchored is sufficient to dispose of this assignment of error, but there is no evidence what-

ever that the lookout which we have described as being maintained upon the Pollock at the time of the collision was not such as was customary in that locality under like conditions, or that it was not ample for the safety of the ship, except it be held that it was necessary for her to be at all times prepared to guard against and to avoid the negligence of the masters of other ships.

It is argued by counsel that if the Pollock had had her steam up and her engines in condition for immediate moving of the vessel, she could have backed away from the Hubbard when the collision was threatened, and so have avoided the accident. There is no evidence whatever in the record that it was customary for a ship lying at anchor, as the Pollock was, to maintain her engines and boilers in condition for such immediate movement, and since no decided cases have been produced as authority for this claim, it cannot be allowed. For these reasons, this third claimed error must be overruled.

[3] The fourth claimed error on the part of the trial court is that the Pollock was at fault in failing to release her anchor chain and thereby allow the ship to drift out of the path of the on-coming Hubbard and avoid the collision. The navigating officers of the Hubbard say that they saw and fully understood the position of the Pollock long before they came near to her; the evidence is that the three men constituting the watch on the Pollock, including the first mate, were all alert and saw the approach of the Hubbard, and understood, as her movement progressed, that her purpose was to anchor above the Pollock and near to the Stadicona, and yet it is clear that no one of the men engaged in navigating the Hubbard, or of those on watch upon the Pollock, thought that there was any danger whatever of collision between the ships until almost immediately before it occurred.

When the Hubbard swung around, and when her stern was about 50 or 60 feet away from his ship, the mate of the Pollock for the first time, anticipating that a collision was possible, called to the captain of the Hubbard that he had better "steady" up his ship or he would hit the Pollock, but this occurred almost at the moment when the ships came together. The officers navigating the Hubbard say that they did not think there was any danger of collision until almost the moment when it occurred, and they gave no signal whatever to the Pollock by whistle or hail, indicating that they thought a collision was impending, or that action by the men in charge of her might be of service in avoiding it.

In argument much emphasis is laid upon the claim that the mate of the Pollock on watch was guilty of negligence contributing to cause the accident because he says that when he realized a collision might occur, he started toward the compressor for the purpose of releasing it, and letting out the anchor chain, which it is claimed would have allowed the ship to drift with the current a sufficient distance to avoid the collision, but that he changed his mind and did not do so. It is to be noted, however, that this officer says he changed his mind and did not attempt to release the compressor for the reason, as he says, "I thought there was no use; it was too late, and I stood back waiting for the jar of the collision," which he realized was inevitable.

Thus the decision of the mate of the Pollock was made in an emergency created by the negligence of the master of the Hubbard, and under such circumstances "the judgment of a competent sailor in extremis cannot be impugned" (The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943), or, as was said by the court in The City of Paris, 9 Wall. 634, 19 L. Ed. 751:

"The acts complained of were done in the excitement of the moment, and in extremis. Whether they were wise it is not material to inquire. If unwise, they were errors and not faults. In such cases the law in its wisdom gives absolution."

It is obvious that this well-settled rule makes impossible the serious consideration of this fourth and last claim of error made by the appellant, and it is overruled.

The decree of the District Court is affirmed.