### THE BARGE 123.

### THE LLANBERIS.

(District Court, D. Massachusetts. November 8, 1917.)

#### Nos. 1448, 1580.

1. COLLISION &#x25C8;&#x21DD;71(3)—VESSELS AT ANCHOR—LIABILITY.
    A steamer, which dragged her single anchor in a gale, and after the second anchor was dropped swung so that she collided with a barge, *held* solely in fault; the second anchor, which the pilot had ordered dropped, having been taken up by one of the ship's officers without orders from the pilot.

2. COLLISION &#x25C8;&#x21DD;71(3)—LIABILITY—FAULT OF VESSEL.
    A barge anchored in a harbor, which saw that a steamer's anchor was not holding and noticed that the steamer was drifting down upon her, *held* not at fault for failure to raise her own anchor and drift to leeward, where it would have taken some time to raise the anchor, and heaving in would have brought the barge nearer to the steamer, particularly as the barge, if set adrift, might have gotten into other difficulties.

3. COLLISION &#x25C8;&#x21DD;71(3)—LIABILITY—FAULT OF VESSEL.
    Where a steamer's single anchor did not hold, and she drifted toward a barge, with which she collided, *held*, that the barge was not at fault in failing to further slacken her anchor cable; it not appearing the slack would have been taken up.

4. COLLISION &#x25C8;&#x21DD;72(1)—LIABILITY—GROSS FAULT OF ONE VESSEL.
    Where a steamer's fault was gross, and was the underlying cause of a collision with a barge, the latter vessel cannot be held to blame unless her contributing fault was clearly established.

&#x25C8;&#x21DD;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Libel by John E. Owen against barge No. 123, together with cross-libel by the Standard Transportation Company against the Llanberis Steamship Company, Limited. Original libel dismissed, with costs, and decree for libelant on cross-libel.

In Case No. 1448:

Wardner & Cavanagh, of Boston, Mass., for libelant.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimant.

In Case No. 1580:

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for libelant.

S. Philip Wardner, of Boston, Mass., for respondent.

MORTON, District Judge. This case arises out of a collision between the British steamship Llanberis and barge 123, which occurred on January 23, 1916, about 2:50 a. m., in President Roads, Boston Harbor, on the north side of the channel.

The doubt which might otherwise exist concerning the facts is largely removed by the testimony of the pilot, Rogers. The steamer came in, in his charge, and anchored about 6:30 on the previous evening. The barge came in about 2 a. m. that night, and anchored about 1,000 feet to leeward of the steamer. The wind was then fresh from the northwest; it soon increased to a moderate gale, and by half past 2 had reached full gale force, 55 or 60 miles an hour. The night was clear and moonlit. The steamer was light; she rode high out of the water, and was much affected by the wind. Before leaving the deck for the night, her pilot had ordered a second anchor to be dropped, and that was done. After he went below, one of the steamer's officers, without orders from the pilot, took up her starboard anchor, so that when the gale came on she was riding to the port anchor alone. She began to swing widely, and to drag her anchor and drift down on the barge.

Her anchor watch consisted of the second officer and a seaman. They did not notice that the steamer was not holding her position, and she had dragged for about 15 minutes and had drifted into close proximity to the barge before they discovered what was happening. The pilot was then called and took charge. He immediately ordered the starboard anchor to be again let go. It stopped the drifting; but the vessels were then so close that the steamer swung against the barge, and both vessels were more or less damaged. They were tied together for 10 or 15 minutes following the collision, to prevent further injury from the swinging of the steamer. Then, the wind having moderated somewhat, the barge got up her anchor, let herself drift astern, and reanchored. After that there was no further trouble.

On the barge, the captain and one or two other men were on deck and alert to the situation from the first. About half past 2 they became aware that the Llanberis was dragging down towards them, and from that time they kept her under close observation until after the accident. The barge originally anchored to about 45 fathoms of chain.

After the drifting of the steamer was observed, about 30 fathoms more were let out. There were still 30 fathoms in reserve, which could have been paid out with safety, but which were not.

[1] Weather conditions were something the Llanberis was bound to notice and to take proper precautions against. The possibility that, if the wind should increase, she might drag a single anchor was evident, and was undoubtedly what led the pilot to order down a second anchor early in the evening. Other vessels were anchored in her vicinity, so placed that danger both to herself and to them might result, if she dragged any considerable distance. When the gale came on, everything suggested the necessity of keeping a sharp lookout against dragging, yet her anchor watch entirely failed to observe that the steamer was doing so until too late for her to avoid fouling the barge. If they had noticed the danger in time, and had dropped the second anchor, the accident would have been prevented. Their negligence stands unexplained and unexcused, and they have resorted to intentionally false testimony in an effort to cover up their misconduct.

Under all the circumstances I am obliged to find that the Llanberis was grossly at fault for failing to maintain a proper anchor watch, and to use adequate means to hold her position and avoid endangering other vessels.

[2] The steamer contends that the barge also was at fault, first, for not getting up her anchor and drifting to leeward, out of the steamer's way, in time to escape collision; and, second, for not slacking out her cable when the danger was imminent.

As to the first charge: The barge's anchor lay almost directly between her and the steamer. It would have taken about ten minutes to raise it. Heaving in on the anchor chain would have brought the barge nearer the steamer, and was a maneuver which could only have been attempted with safety soon after the steamer began to drag. At that time the danger that the vessels might come together was not apparent; when it became so, it was too late for the barge to act in the way suggested. Moreover, the wind was then a full gale; no tug was available; and, if the barge had put herself adrift, she might have got into difficulty. She could not reasonably be expected to take such chances, except to escape from an imminent and otherwise unavoidable accident. When the situation had reached that point, the barge's anchor could not have been raised without increasing the danger. It does not seem to me, therefore, that the barge was at fault for not getting up her anchor. The Juniata (D. C.) 124 Fed. 861.

[3, 4] As to the second charge: Whether the barge was at fault for not further slacking her cable is a much more difficult question. According to the testimony of her captain and mate, they stood watching the steamer swinging wildly from side to side and drifting down on her; they slacked the barge's anchor chain, but the steamer approached faster than the barge took up her slack, so they stopped paying out the chain and did nothing further. When the vessels came together (which was after the steamer had brought up on her second anchor) the bow of the barge was only 40 or 50 feet ahead of the

steamer's stern.   Sixty or 70 feet more distance between the vessels would have avoided the accident.

, If the evidence that slacking out the barge's chain would have furnished that distance were clear and convincing, I should have little hesitation in holding her at fault for not having done so.   But the evidence is not of that character.   On the contrary the pilot, Rogers, testified that, assuming the barge to have had 30 fathoms more cable which could have been paid out, he would not say whether that amount would have saved the accident; that the angle of the chain was somewhat across the steamer's stern; that it would have been proper to have let out the chain, and if that had been done it might have saved the accident.   There is no evidence directly contradicting this.

I am asked as a matter of common knowledge to disregard the testimony of the captain and mate, and the pilot's doubt, and to find that, if the chain had been slacked 30 fathoms more, sufficient clearance would have been provided.   But I am not prepared to do so.   The barge captain certainly acted on his opinion, a fact which gives weight to his testimony.   The Charles Hubbard, 229 Fed. 352, 143 C. C. A. 472.   Letting out the chain involved no great labor, and it is not easy to see why he should have stopped doing it, except, as he says, for the reason that the maneuver was doing no good.   It seems probable that during the few minutes just preceding the collision, when the wind was at or near its height, the steamer drifted much faster than she had previously done, and that, at the last, the situation developed with considerable rapidity.   Moreover, as Capt. Owen testifies, lengthening the barge's chain might have caused her to spring ahead when she stretched it.   He says that there was, apparently considerable chain under her when she started to get up her anchor, which supports her captain's statement that she was slow in taking up the slack when he paid it out.

On all the evidence I think that Pilot Rogers stated the matter very fairly, and that it is not shown, either that the barge could, or that she could not, have prevented the accident by letting out her anchor chain. The most that can be said against her is that she might possibly have prevented it by doing so, and that she did not make the effort.   The steamer's fault being gross, and being the underlying cause of the whole trouble, still operating at the time of the collision, the barge ought not to be held to blame unless her contributing fault be clearly established.   The Oregon, 158 U. S. 186, 197, 15 Sup. Ct. 804, 39 L. Ed. 943.   That has not been done.

The result is that the libel must be dismissed, with costs, and that on the cross-libel there must be a decree in favor of the libelant for full damages; and the case must stand referred to an assessor to state them.