EAGLE OIL TRANSPORT CO., Limited, v. BOWERS SOUTHERN DREDGING CO.

THE SAN VALERIO.

(Circuit Court of Appeals, Fifth Circuit. January 15, 1919.)

No. 3259.

SHIPPING ☞81(1)—LIABILITY OF VESSEL—FOULING ANCHOR LINE OF DREDGE PONTOONS.

A ship *held* in fault for injury to the pipe line and supporting pontoons of a dredge working in an adjoining slip, caused by striking the anchor line of the pontoons in backing out of the slip, where it was in the same position when she safely passed in the day before, and no request was made of the dredge to move it.

Appeal from the District Court of the United States for the Southern District of Texas; J. C. Hutcheson, Jr., Judge.

Suit in admiralty by the Bowers Southern Dredging Company against the steamship San Valerio; the Eagle Oil Transport Company, Limited, claimant. Decree for libelant, and claimant appeals. Affirmed.

Wm. B. Lockhart, of Galveston, Tex., and J. Parker Kirlin, of New York City (Kirlin, Woolsey & Hickox, of New York City, on the brief), for appellant.

John Neethe, of Galveston, Tex. (Williams & Neethe, of Galveston, Tex., on the brief), for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. On November 24 and 25, 1916, the appellee was engaged in dredging in a slip between two docks in the port of Galveston, and had a dredge located in that slip, to which dredge was attached a line of floating pipe, supported by pontoons, extending around the pier immediately west of that slip to the next pier in that direction. At the turn or elbow of the pipe line it was anchored. On the morning of November 25th the steamship San Valerio, while it was being backed out of its berth alongside the pier immediately east of the slip, collided with the line of the anchor mentioned, and caused damage to the pipe line and some of the pontoons, which the libel

attributed to negligence in the management and control of the ship in attempting to back it out of the slip.

When the ship went to its berth on the day before—November 24th —the floating pipe line, the pontoons, and the anchor mentioned were located just where they were when the ship backed out. When the ship entered the slip, those in charge of its navigation were apprised of the location of the anchor to the pipe line by a buoy, which was afloat and seen at that time, and got the ship in without colliding with the anchor line and without its being moved. There was evidence in behalf of the ship that, when it backed out the next morning, that buoy was submerged and could not then be seen. But the evidence without dispute showed that those in charge of the navigation of the ship as it was backed out knew of the presence of the anchor line, if not of its exact location. The pilot in charge of the ship as it backed out testified in its behalf. He admitted that he knew the pontoon line was fastened either by an oversea wire or a submerged wire, and that he did not look out for that wire, because, without having any knowledge at all of the length of the anchor line, he guessed that it was shorter than it was in fact.

There was no contradiction in the evidence to the effect that those in charge of the dredge, the pipe line, and pontoons opened the line whenever it was desired to let a ship through, and moved the buoy and anchor when notified that it was in the way of a passing ship. The danger of contact with the anchor line could have been avoided by slacking it down. Those in charge of the ship did not signal or ask that this be done. There was nothing to indicate that the pipe line was wrongfully at the place at which it was anchored. The ship having gone to its berth with full knowledge of the location of the pipe line and its anchor, those in charge of the latter were not, the situation remaining the same, and in the absence of any signal or request to do so, called upon to move the anchor or to slacken its line to get it out of the way of the ship when it was leaving its berth. It was not shown that it was disclosed to them that that precaution was any more needed in the one case than it had been in the other.

The collision in question being one between a moving vessel and an anchored pipe line, the location of which was known, there is a presumption of fault on the part of the moving vessel. The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943; The Charles Hubbard, 229 Fed. 352, 143 C. C. A. 472. To say the least, the evidence adduced was not such as to rebut that presumption, or to show that the collision was attributable, in whole or in part, to any fault of those in charge of the pipe and pontoon line and its anchor. The court did not err in rendering the decree against the ship. The amount of the award is not complained of.

The decree is affirmed.