COMPANIA DE NAVEGACION INTERIOR, S. A., v. BOSTON–VIRGINIA TRANSP. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. February 16, 1922.)

No. 3721.

1. **Collision** ⊜⊃71 (2)—**Tug held in fault for collision between tow and anchored steamship.**

A collision between a steamship anchored for loading near the edge of the channel of a river, leaving ample room in the channel for the passage of other vessels and 60 to 80 feet of shallow water between its stern and the bank, and a barge in tow of a tug, which attempted to pass between the steamship and the bank, *held* due solely to the fault of the tug.

2. **Collision** ⊜⊃123—**Vessel clearly in fault has burden of establishing fault of other vessel by clear evidence.**

Where one of two vessels in collision was clearly in fault, she has the burden of establishing the fault of the other by clear evidence.

3. **Collision** ⊜⊃129—**Owner of injured vessel entitled to recover all expense necessary to restore her to former condition.**

The owner of a vessel injured in collision through fault of another vessel *held* entitled to recover all expense necessarily incurred in restoring her to her former condition, including cost of survey, towing to dry dock, and dry docking.

Appeal and Cross-Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Suits in admiralty by the Boston-Virginia Transportation Company and the Freeport & Tampico Fuel Oil Corporation against the Compania De Navegacion Interior, S. A. From the decrees, both parties appeal. Reversed on appeal of the Boston-Virginia Transportation Company, and affirmed on other appeals.

John Charles Harris, of Houston, Tex., for appellant and cross-appellee.

E. D. Cavin and Ballinger Mills, both of Galveston, Tex., and T. Catesby Jones, of New York City, for appellees and cross-appellants.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. [1] A collision occurred, about 8 o'clock at night, between the steamship L. V. Stoddard and certain barges then being towed by the steam tug Tomboyache, while the steamship was lying at anchor in the Panuco river a short distance below Tampico, Mexico, taking on a cargo of crude oil from barges alongside. The river at this point is between 1,000 and 1,200 feet wide, and the fairway from 700 to 800 feet wide. The steamship had been anchored by

a pilot near the left edge of the channel, and had swung towards the left bank, and was held athwart that part of the river by reason of being slightly aground in soft mud. In that position her stern was between 60 and 80 feet from the left bank of the river. The water along the bank was shallow. Ahead of the steamship the channel was unobstructed and sufficiently wide and deep for safe navigation. The place at which the steamship was taking cargo was a loading place for vessels.

The steam tug Tomboyache was proceeding down stream with three oil-laden barges, which she was pushing ahead end on end, and attempted to pass between the steamship and the left bank of the river, when one of the barges collided with and twisted and bent the ship's rudder and rudder plate. The Tomboyache was under contract with the Freeport & Tampico Fuel Oil Corporation to tow oil barges, and it was the intention to deliver one of the barges then in tow to the Stoddard. The oil contained in it completed her cargo. The two other barges contained oil for other vessels nearby..

The lights of the Stoddard were burning, and were seen by the master of the tug from the time he turned a bend in the river about three-eighths of a mile above where the Stoddard lay. There was ample space in the channel for vessels to pass. The tug carried a powerful searchlight which was being played on the Stoddard and the space between her and the left bank of the river after the tug passed the bend in the river.

Two original libels in personam were filed against appellant, the owner of the tug, one by the Boston-Virginia Transportation Company, the owner of the steamship L. V. Stoddard, and the other by her charterer, the Freeport & Tampico Fuel Oil Corporation; the owner seeking to recover for the damage to the steamship, and the charterer seeking to recover for the loss to it of her use. The owner of the tug brought the charterer in to defend the suit brought by the owner of the steamship. The defenses set up by the owner of the tug were that the steamship was at fault, in that it obstructed the fairway, and that the charterer of the Stoddard, over the protest of the owner of the tug, insisted upon delivering one of the barges to the Stoddard immediately, refused to wait until daylight, and agreed that the charterer would be responsible for any and all damage which might be done to the steamship, the oil barges or the tug. By agreement, the cases were consolidated.

The Stoddard was examined at Tampico, and it was considered safe for her to proceed to New Orleans, which she proceeded to do, and remained there for ten days. A survey was had, repairs made, and she was placed upon the dry dock.

The master of the tug testified that the alleged agreement of indemnity was made in the pilot house in the presence of his son and the engineer of the tug. The representative of the charterer, while admitting the presence of the others in the pilot house, flatly contradicted this evidence for appellant. Neither of the other parties present at the time were called as witnesses. Several witnesses for appellees testified that after the collision an attempt was made to force the barges

by the Stoddard, and the master of the tug, who was the only witness for appellant, made no denial.

The court below rendered a decree in favor of the owner of the Stoddard for repairs and certain items of expense incurred, but refused to allow anything for the cost of dry-docking the steamship, amounting to $619.80; for the cost of towing to the dry dock at New Orleans, amounting to $55; for the cost of survey, amounting to $250.-72; or for the cost of the survey report, amounting to $50. A decree was also rendered in favor of the charterer, awarding to it $360 per day for seven days as damages for the loss of the use of the Stoddard.

[2] It is contended by the owner of the tug that the Stoddard was at fault in anchoring and in remaining in such a position as to obstruct navigation, and that therefore her owner cannot recover, or in the alternative that the damages should be divided. But the evidence fails to show negligence upon the part of the Stoddard which in any degree contributed to the collision. There was ample space in the channel for other vessels to pass. On the other hand, the negligence of the tug was clearly established, and that negligence was the proximate cause of the collision. It was negligent to undertake to pass between the steamship and the bank of the river. When it became apparent to the Tomboyache that the Stoddard was aground, either one of two courses could have been adopted to prevent the collision: The tug could have been brought to a standstill, or it could have remained in the channel. Under these circumstances, the burden was upon the owner of the tug to make the fault of the anchored vessel clearly appear. The Clarita and The Clara, 23 Wall. 1, 23 L. Ed. 146; The Virginia Ehrman, 97 U. S. 309, 24 L. Ed. 890; The City of New York, 147 U. S. 72, 13 Sup. Ct. 211, 37 L. Ed. 84; Eagle Oil Transport Co. v. Bowers Southern Dredging Co., 255 Fed. 52, 166 C. C. A. 380; The Europe, 190 Fed. 475, 111 C. C. A. 307.

The vessels held at fault in the cases cited by appellant were anchored in the fairway in such manner as to obstruct the passage of other vessels. In this case the anchored vessel was only slightly, if at all, in the channel, and was not interfering with the passage of other vessels in the remotest degree. Of course, any agreement between the charterer and the owner of the tug could not affect the case of the owner of the Stoddard.

We are of opinion that appellant failed to show by a preponderance of evidence that the assistant manager of the charterer of the Stoddard agreed that his company would be responsible for any damage. It would have been a most unusual agreement. The testimony of the alleged parties to it was in direct conflict, and the appellant failed to corroborate the testimony of the master of the tug by that of his son and the engineer.

[3] The owner of the Stoddard has filed cross-assignments of error, based upon the refusal of the court to allow for the costs of the survey and report, and of the towage and dry-docking at New Orleans. We think these items should have been allowed. They were the direct result of the collision, and appear to have been incurred in putting the ship back into her former condition. In The Baltimore, 8 Wall. 377,

19 L. Ed. 463, the Supreme Court, in laying down the rule to be followed in such cases, said:

"'Restitutio in integrum' is the leading maxim in such cases, and where repairs are practicable the general rule followed by the admiralty courts in such cases is that the damages assessed against the respondent shall be sufficient to restore the injured vessel to the condition in which she was at the time the collision occurred; and in respect to the materials for the repairs the rule is that there shall not, as in insurance cases, be any deduction for the new materials furnished in the place of the old, because the claim of the injured party arises by reason of the wrongful act of the party by whom the damage was occasioned, and the measure of the indemnification is not limited by any contract, but is coextensive with the amount of the damage."

The charterer by cross-assignments contends that the allowance to it for the loss of the use of the vessel for only seven days was inadequate, and should have been made to cover a period of ten days. While the testimony shows that the Stoddard remained in New Orleans ten days, it does not appear that she was undergoing repairs on account of the injuries received in the collision for more than seven days.

The decree is affirmed on the original appeal and on the cross-appeal of the Freeport & Tampico Fuel Oil Company, and reversed on the cross-appeal of the Boston-Virginia Transportation Company, and remanded for further proceedings not inconsistent with this opinion.

Affirmed in part.

Reversed in part.