### THE ALABAMA.

### THE BRANDYWINE.

(Circuit Court of Appeals, Fifth Circuit. April 10, 1923.)

No. 3978.

Salvage ☞48—Evidence held insufficient to show injury to salving vessel.

Award to a salving vessel *held* excessive, to the extent that it included cost of repairing an injury which was not discovered until more than five months after the service was rendered, and which was not shown by satisfactory evidence to have been received in performance of such service.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Suit in admiralty for salvage by the Texas Company, owner of the steamship Alabama, against the United States Shipping Board, owner of the steamship Brandywine, in which the Compania Mexicana de Petroleo, as owner of the tug El Aguila, intervened. Decree for libelant, and respondent appeals. Modified and affirmed.

For opinion below, see 280 Fed. 738.

J. Frank Staley, Sp. Asst. Atty. Gen., Arthur M. Boal, Asst. Admiralty Counsel U. S. Shipping Board, of Boston, Mass., and H. M. Holden, U. S. Atty., of Houston, Tex. (Chester J. Gerkin, of Washington, D. C., on the brief), for appellant.

T. Catesby Jones and James W. Ryan, both of New York City

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(Bigham, Englar & Jones, of New York City, on the brief), for appellee Texas Co.

H. C. Hughes, of Galveston, Tex. (Kirlin, Woolsey, Campbell, Hickox & Keating, Ira A. Campbell, and Edwin Serre Murphy, all of New York City, on the brief), for appellee Compania Mexicana de Petroleo.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The steamship Brandywine, owned by the United States of America, on April 1, 1920, stranded on the southeast portion of Medio Shoal, situated about three miles northeast of Lobos Island, off the east coast of Mexico. The reef was about 200 yards long. At its highest point it is about 4 feet under water and at its edge about 19 feet. The rise and fall of the tide is about two feet. The vessel was firmly on the reef; her bow being in about 4 feet of water and there being 19 feet at her stern. The reef edge goes off abruptly, there being a good depth of water near the reef. The Brandywine was in ballast. She was a steel screw steamer of 4,967 gross tons, with a dead-weight carrying capacity of 7,047 tons, and was valued at about $1,500,000. After endeavoring to get off under her own power, she signaled by wireless for assistance. This call was responded to by the Alabama, a tanker owned by the Texas Company, then loading with oil at Port Lobos, Mexico. She at once suspended her loading operations and came to the Brandywine's assistance, arriving about 3 o'clock on April 1st. She was accompanied by the Texas Company's launch Matellas, which remained and assisted during the entire time. She began immediately attempting to pull the Brandywine off, breaking a number of lines. These efforts were unsuccessful during April 1st and April 2d.

In response to calls for assistance by the Brandywine, a large and powerful tug, El Aguila, belonging to Compania Mexicana de Petroleo, came also to her assistance on the morning of April 3d, and lines being made fast to the Brandywine from both the tug and the Alabama, the Brandywine was pulled off from the reef at 12:14 p. m.; her anchors, however, remaining on the reef. Shortly after the Brandywine came clear of the reef, and while she was endeavoring to reclaim her anchors, the line from her to El Aguila parted. The Alabama continued to hold on to her line, thus preventing the Brandywine from going back on the reef, and this continued until 3 o'clock p. m., when, the anchors being reclaimed, all lines to the Brandywine were let go, and she steamed away, having received no damage.

During April 2d, when the Brandywine sent out her second call for help, the weather signs indicated that a norther was approaching, which storm arrived on April 4th. On April 1st, about 6 p. m., the testimony indicates that the Alabama bumped slightly against a shoal or reef, but did not ground. An examination made by going down into the Alabama showed no leak had resulted, and no further inspection was made of her until she went into dry dock in the September following, more than five months afterwards. There was some evidence that the Alabama used up an old 14-inch and a new 8-inch line, and that

she lost 4 days' time, in the salvage operations, the commercial value of which was $2,372.03.

When the Alabama went into dry dock in September, 1920, certain damage to her bottom was discovered to then exist, the repairs to which, alone, cost $17,000, and it is claimed that she should be allowed a demurrage of $6,000 for her time during which the repairs were being made. The value of the Alabama was $613,614, and of El Aguila about $300,000. El Aguila was a large seagoing tug, equipped for salvage work. The Alabama was a steel screw steamer of about $2,800 gross tons, with a dead-weight carrying capacity of about 4,-400 tons.

The District Court, in estimating the salvage award, took into consideration the $17,000 paid for repairs to the bottom of the Alabama, which he adjudged to have been occasioned without her fault and in the carrying out of said salvage service; also her claims for demurrage while undergoing such repairs, and for the value of her time consumed in the work of salvage and for the property used up therein, together with a reward for her services, including those of the steam launch Matellas, which it was stipulated should be treated as a part of the Alabama's services; and also considered the services of El Aguila, together with the property used up by her in such operations, and rendered a decree for the entire salvage services of $45,000, apportioning $35,000 to the Alabama and $10,000 to El Aguila.

We think the sum awarded to El Aguila was a fair and reasonable award for the services rendered. While it is true that a norther was stated to be approaching at the time the service was performed, the sea was calm and the wind moderate. The actual time consumed by the tug from her commencement of actual salvage operations until the vessel was freed from the reef was approximately 3 hours. The entire time from her departure from Tampico to her return was 2½ days. Counsel for the United States does not seriously question the amount of the award to the tug.

We think, however, the award to the Alabama was too great, and we cannot agree with the learned District Judge in including in such award the amount expended by the Alabama in September, 1920, for the repairs to her bottom. The evidence is wholly unsatisfactory to establish that these repairs, to any considerable extent, at least, were rendered necessary by reason of the grounding of the Alabama on April 1st. While the testimony shows that the Alabama was in dry dock in January, 1920, and at that time no injury appeared on her bottom, and while there is further testimony that the officers thereof did not know of any other grounding or bumping which she had suffered between that time and the date of her going into dry dock in September, there is no sufficient evidence that the slight touching of ground on April 1st inflicted the injuries discovered in the September following. Her log of April 1st states:

"While trying to get another line to S/S Brandywine, it felt as if S/S Alabama touched the bottom lightly."

No notice appears to have been given to the Brandywine, or any claim to have been made of any injury, at the time. No injury seems

then to have been thought by the officers of the Alabama to have been inflicted. No representative of the Brandywine appears to have been present when the Alabama was examined in the dry dock in September, 1920. The testimony of her officers, when sifted, is only to the effect that they do not know of any other grounding of the Alabama between the times of her being in the dry dock. It is entirely possible that the Alabama may have received the injuries to her bottom or the greater part thereof otherwise than by the touching of the ground at or near Medio Reef, or that the injuries discovered in September may have been greatly increased by the failure to promptly repair those occurring because of such touching immediately after their happening. Taking the whole record in the case, we do not think the extent of this injury was proven in such manner that the bill for repairs should be included in this award.

Taking the entire evidence, considering the fact that the Alabama touched the reef, but not sufficiently to ground, also the time expended by the Alabama and thus lost from her commercial work, and considering the property used up by her in her efforts to get the Brandywine afloat, with the dangers to which she was exposed by reason of the character of the vessel and the locality in which she was operating, her value, and her prompt response to the Brandywine's call for assistance, and the services rendered by herself and her attendant launch, we think that an award to the Texas Company, as owner of the steamer Alabama, for itself and on behalf of the officers and crew, of $20,000 is sufficient, said amount to be apportioned three-fourths to the owner and one-fourth to the officers and crew, and that the decree in the lower court should be modified accordingly, and, as thus modified, should stand affirmed.

Modified and affirmed.