## GALENA NAV. CO. et al. v. SINCLAIR NAV. CO.*

(Circuit Court of Appeals, Fifth Circuit. January 31, 1927.)

No. 4766.

1. **Shipping** ⚙️58(2¾)—**Towage** ⚙️15(2)— Stranding of barge held due to negligence of charterer and towboat company, taking barge out of ship channel to prevent stranding.

Evidence *held* to show that stranding of barge was caused by negligence of charterer and towboat company, in intentionally taking barge out of ship channel to prevent current of river from forcing it against opposite side of channel.

2. **Shipping** ⚙️58(3)—**Towage** ⚙️15(3)— Owner was entitled to recover for incidental repairs necessitated by others' negligence but not to profit out of injury by allowance for painting not necessitated thereby.

That other repairs were made to barge did not relieve charterer and towboat company, whose negligence caused stranding of barge, of incidental expense necessitated by their negligence; but owner was not entitled to make profit out of injury, and was therefore not entitled to allowance for painting bottom of barge, not necessitated by accident or by resulting exposure.

3. **Shipping** ⚙️58(2¾)—**Towage** ⚙️15(2)— Evidence held to show that stranding of barge, due to negligence of charterer and towboat company, indented two of its plates.

Evidence *held* to show that two of barge's plates were indented by stranding of barge, resulting from negligence of charterer and towboat company, and owner was entitled to allowance for cost of replacing them.

4. **Admiralty** ⚙️39—In owner's suit for negligent stranding of barge, absence of evidence of protest held to justify refusal to dismiss case for suppression of facts.

In suit by owner of barge against charterer and towboat company for damages resulting from negligent stranding of barge, absence of any evidence that protest was made at time of stranding, or ever existed, *held* complete justification for refusing to dismiss case for suppression of facts favorable to defendants.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

*Rehearing denied March 11, 1927.

Libel in personam by the Sinclair Navigation Company against the Galena Navigation Company and another. Decree for plaintiff, and defendants appeal. Affirmed.

John D. Grace, M. A. Grace, and Edwin H. Grace, all of New Orleans, La. (J. Y. Powell, of Houston, Tex., on the brief), for appellants.

W. T. Armstrong and W. E. Cranford, both of Galveston, Tex., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal from a decree in an admiralty suit in personam awarding to the owner of the oil barge Badger damages on account of the stranding of that barge while she was under charter to the Galena Navigation Company and being towed for it by the D. W. Ryan Towboat Company. The libel seeks to recover the cost of painting the entire bottom of the barge and replacing two indented plates, and, as incidental to such cost, the expenses of towing to and from dry dock, of dry-docking, and of a survey to ascertain the extent of the damage.

The charterer and the towboat company, appellants, defended on the grounds that the stranding was not caused by negligence, but was the result of an inevitable accident, and, even if they were liable because of negligence, that they should not be held for the total cost of painting, for the reason that paint covering only a part of the bottom was damaged, or for any part of the cost of replacing the plates, because it was not shown by the evidence that the damage to the old plates was caused by the stranding.

The Badger was a steel barge, about 265 feet in length, with a beam of 33 feet. On December 15, 1923, while she was under charter to the Galena Navigation Company to transport crude oil between points on the Houston ship channel, and, while loaded to a depth of 16.5 feet, she was being towed by a small tug against the current, and was taken 30 or 40 feet out of the ship channel to the starboard and toward the entrance of the San Jacinto river, where, because of a strong current in the river, due to a freshet, she went aground, and so remained for about 24 hours, after which, with the assistance of tugs, she was floated. The barge was taken out of the channel intentionally and for the purpose of preventing the current of the river from forcing it aground on the opposite side of the channel. The point of stranding was in an eddy formed by the current of

the river, which, in times of freshet, such as this was, brought down logs and driftwood, and partially buried them in the sand, and left them sticking up out of the water at low tide.

On December 20 a preliminary survey was made, without taking the barge out of the water, by a marine surveyor, who testified that at that time two plates on the starboard side near the bow had been indented, and that loose scales were found, indicating that the indentations had been made quite recently; that is, within two weeks. The Badger had been in dry dock about a month before the stranding. At that time her bottom had been painted and the indented plates were in good condition. Thereafter she was operated by her owner, until December 10, when she was chartered to the Galena Navigation Company, appellant, and was operated by it until the accident, and, with the exception of 2 days, from then on until December 28, when she was laid up for repairs. She was replaced on the dry docks in January, 1924, and her entire bottom was repainted at a cost of $457, although only the paint that covered about 40 per cent. of her bottom had been scraped off or damaged. The indented plates were replaced at a cost of $225.

The incidental expenses of towing, drydocking, and survey appear to be reasonable, but they are objected to by appellant, because the barge remained in dry dock some time and underwent considerable additional repairs. The expense of remaining on the dry dock was charged to appellants only during the period that was necessary to make the repairs for which claim is made against them. The Badger's log book was produced at the request of appellants. The stranding in question is recorded in it, but it does not disclose that any other mishap or accident occurred after the dry-docking in November, 1923. The owner kept on board the Badger at all times during the period under investigation two employees, referred to in the evidence as a master and a deckhand. The master was 85 years of age, had ceased to work for appellee at the time of the trial, and did not testify. The deckhand, who was an experienced navigator, testified that his employment began on December 5, 1923, and continued for several years without interruption. He further testified that he made the entries in the log book at the master's direction, and that they were correct. Appellants also called for the master's protest, which they contend was made at the time of the stranding. The evidence shows that ap-

pellee's superintendent gave instructions that protest be made, but fails to show that one was in fact made.

The District Judge's decree awards to appellee the entire cost of painting, and the incidental expenses of towing, dry-docking, and survey, but disallows the cost of replacing the indented plates.

[1, 2] In our opinion, the evidence conclusively shows that the stranding was caused by negligence. To say the least, it is not good navigation to take a vessel drawing 16.5 feet out of a ship channel and into a position where sand bars, with sunken logs sticking up out of them, are likely to be formed in a few hours. It was a proper precaution to place the Badger in dry dock after the stranding. The fact that other repairs were made does not relieve appellants of the incidental expenses that were made necessary by their negligence. We recognize the doctrine of restitutio in integrum, as declared by the Supreme Court in The Baltimore, 8 Wall. 377, 19 L. Ed. 463, and followed by this court in Compania De Navegacion Interior v. Boston-Virginia Transportation Co., 278 F. 868. But the party injured is not entitled to make a profit out of the injury. There is no serious claim that the paint was damaged by being exposed to the air. Nor would any loss be incurred by painting the whole bottom when the regular time came for that, as new paint could then be put on the entire bottom without any additional cost to the owner. We therefore conclude that the allowance for painting should be reduced by 60 per cent., so as to allow to appellee a recovery of 40 per cent., or $182.80, on that item.

[3] On the other hand, we are of opinion that appellee was entitled to recover the cost of replacing the indented plates, amounting to $225. It is a fair inference from the evidence that the plates were indented while the barge was stranded. The so-called deckhand was really the active man in charge of the barge. According to his testimony, there was no damage done after December 5, when he entered the owner's employment. The testimony of the surveyor, who discovered the injury upon the preliminary survey, was to the effect that the damage was done within the time of the deckhand's employment. The log book also negatives the theory that the injury occurred while the vessel was being operated by its owner. It is objected that the official log book was not produced, and on that ground appellants insist that a presumption arises of the suppression of evidence favorable to them, and that the libel

should have been dismissed. However, it is clear that there was no other log book. The possibility of the damage complained of being done by the anchor while the vessel was loading or unloading at a dock is suggested, but that possibility is fairly rebutted by the evidence.

[4] The circumstances are not similar to those in The Alabama (C. C. A.) 288 F. 170, relied on by appellants. There the vessel only bumped slightly, if at all, against a shoal or reef, was not placed in dry dock until after the lapse of about five months, and no evidence existed upon which could be based the conclusion of damage to her bottom. The absence of any evidence that any protest was made at the time of the stranding, or ever existed, afforded complete justification for refusing to dismiss the case for suppression of facts favorable to appellants.

The decree of the District Court is modified, by a net reduction of $49.20, but with interest on the reduced amount in accordance with the provisions of such decree. As so modified, that decree is affirmed, at the cost of appellants.