## THE ST. PAUL.

(Circuit Court of Appeals, Second Circuit. January 12, 1921.)

### No. 115.

1. Admiralty ⊕—103—Final order disallowing claim against fund appealable; "disbursement."

The return by a marshal as a "disbursement," in his bill of costs arising out of the seizure and sale of a steamship, of a claim for wharfage, which he neither contracted nor paid, was improper, and such item was properly treated as an unadjudicated claim against the proceeds of the vessel, and a final order disallowing such claim in part is appealable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Disburse—Disbursements.]

2. Admiralty ⊕—53—Allowance of wharfage against vessel in custody.

A company authorized by the court to discharge the cargo of a steamship in custody of the marshal took her to its pier, where it held her for some three months after she was discharged, pending an appeal by it from an order refusing to confirm a sale at which it was the purchaser. Held, that it was entitled to wharfage during such time not at usual commercial rates, but in such reasonable sum as it would have cost to keep the vessel at a less expensive berth.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by J. Aron & Co., Incorporated, against the Steamship St. Paul. The Hudson Navigation Company appeals from an order allowing wharfage. Affirmed.

See, also, 262 Fed. 1021.

The St. Paul, while laden with cargo, was seized at the instance of numerous libelants (beginning in April, 1919), whose claims were ultimately consolidated into a cause entitled as above. Under process in that case the United States marshal had custody of the vessel on June 11, 1919. The ship, however, was in wretched condition; for on or before May 27th she had caught fire, and salvors, to extinguish the flames, had been obliged to sink her as she lay anchored, and thereafter raise her with cargo already injured and liable to further depreciation.

These facts appearing, the District Court, on June 11th, ordered that the marshal be "authorized to permit the Hudson Navigation Company to move the said steamship from her present anchorage to Pier 32, N. R., and to make an arrangement with the said Hudson Navigation Company for the discharge of [the cargo at said pier]; the amount of the cost of discharging, storing, and caring for the cargo to be subject to the approval of the court; the said Hudson Navigation Company to look to the said cargo for the payment of the cost of said discharging." Accordingly the Hudson Company took charge of the ship, in the sense of directing where she should lie, and removed cargo until July 17, when discharge was complete; but the pier alongside contained cargo for a long time afterwards.

The cargo being out, an order was entered on August 5th permitting "the various owners of cargo" to "withdraw their cargo from the custody of the marshal" on terms which would produce a fund wherewith to pay Hudson Company for unloading and caring for the goods. By the same order, it was referred to a commissioner to ascertain what should be paid to Hudson Company for its labors and expenses in unloading and delivering cargo.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

While unloading was in progress, and on July 8th, the marshal (by virtue of process in this suit) sold the steamship; Hudson Navigation Company was the successful bidder, but the court refused confirmation, and directed a resale on August 7th. From the order refusing confirmation Hudson Company appealed to this court, and obtained a stay in respect of such resale pending determination of the appeal. Appellant took nothing by its appeal, and resale was had November 24th.

Meanwhile the reference proceeded to ascertain what the Hudson Company should be paid for unloading and delivering cargo under the order of June 11th. That company claimed that cargo should pay all wharfage, not only down to time the ship was empty (July 17), but thereafter until October 8th (when the ship was removed to another berth), apparently because the pier was more or less occupied by cargo, down to and perhaps after the date of such removal. The commissioner however held that, with unloading completed on July 17, "the berthing of the ship ceased to be a charge against the cargo in whole or in part"; but he allowed against cargo a charge for use of pier, diminishing as the space occupied diminished. In result, out of a charge of $26,500 by Hudson Company for wharfage and storage, the commissioner disallowed $10,962.50, as representing wharfage charges against the St. Paul after she was empty, and the commissioner's report was confirmed on December 15th by an order not complained of.

Thereupon Hudson Company submitted to the United States marshal a bill (as appears by reference to the original exhibit) against "S. S. St. Paul and owners" for $10,962.50 wharfage at Pier 32, N. R., from July 17 to October 8, 1919, and this amount the marshal inserted in his "bill of costs" against the fund of $100,305 produced by the resale of the St. Paul. It is therein called a "disbursement," which it is not, in the proper sense of having been either paid out by the marshal or contracted for by him. The proceeding is really a method of advancing a claim against a fund in court.

The marshal's bill was taxed by the lower court on January 22, 1920, and the wharfage claim allowed from July 17 to August 7, or in the sum of $2,625, but all wharfage after the latter date was refused. Thereupon the Hudson Company appealed from such disallowance of wharfage, and of certain other items concerning which we think no further mention is necessary.

Barber, Watson & Gibboney, of New York City (Stuart G. Gibboney and Joseph Diehl Fackenthal, both of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (T. Catesby Jones, of New York City, of counsel), for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The question of law presented by this record is whether we have any right to hear the appeal. It has been often held that mere questions of costs are not appealable (The Ada, 255 Fed. 52, 166 C. C. A. 378, citing cases), and, since it is out of a taxation of the marshal's "bill of costs" that this appeal grows, we are asked to dismiss it.

But it is a mistake to suppose that in the proper sense of that word the marshal has, or can have, any costs at all. That official is entitled under the statute to certain fees and to his reasonable expenses in caring for property under seizure. But he is no party to the suit, he has no opponent, and cannot collect costs; he does get fees, as does the clerk of court, and expenses beside. The habit is firmly fixed of calling the fees of both clerk and marshal their "costs," but the word is misleading.

But this wharfage item is not even a "disbursement," for the marshal never authorized berthing the St. Paul at Pier 32, and never promised to pay for such berth—indeed, this is admitted. What he has done is this: He has presented in his bill the demand of Hudson Company to be paid for services rendered the ship—a kind of service which might have been enforced by libel in rem or by petition against the proceeds of the res.

The method here pursued is without precedent, and not to be approved as such; but we feel justified in treating the claim as it was below, viz. as a demand for preferential payment, or as an asserted superior lien on the proceeds of the steamship. Consequently a final order refusing (in part) such payment out of, or lien upon, a fund in the registry is the subject of appeal. Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157.

[2] The reason moving the District Court to refuse all wharfage after August 7th we may accept, from the concessions of counsel rather than the record, to be the fact that on that date a resale would have occurred had not this appellant procured a stay. But such stay did not mean that the steamship was ordered to remain at Pier 32— one of the most expensive places in this harbor. It was just as possible and just as necessary, after the stay as before, to exercise economy and common sense in caring for the St. Paul, and to keep her at Pier 32 was neither good sense nor economy.

But it was Hudson Company that took the ship to Pier 32, and that company also kept her there after she was emptied. Why this was done the record does not tell, further than to prove that the damaged cargo was removed so slowly that certainly until long after August 7, and perhaps as late as October 8, the pier was still so incumbered with cargo, that where the St. Paul lay was an undesirable berth. The inference is that whatever could be gotten for wharfage was so much clear gain. This condition of affairs lasted 82 days, during which Hudson Company pressed on the steamship (so to speak) a berth at Pier 32.

We cannot approve the reason advanced for refusing wharfage after August 7th, but are of opinion that the duty of Hudson Company, the moment cargo was unladen, was to order the boat to an inexpensive place; and if it was preferred to keep her at Pier 32, the charge must be reasonable for the St. Paul, not for Pier 32 under ordinary conditions. In fact the order appealed from awarded $2,625 for the first 21 days of the 82-day period. We think the award should have been a reasonable charge for 82 days, and some evidence of what a reasonable charge was is shown by what it cost to berth the St. Paul from October 8th to November 24th, when she was at last sold. Applying this measure, Hudson Company has by the award of $2,625 been, if anything, overpaid.

The order is affirmed, on the ground that the award made was sufficient, although of the reason given therefor we disapprove. There will be no costs.