## THE HERBERT L. RAWDING.

### No. 1012.

District Court, E. D. South Carolina, in Admiralty.

Feb. 25, 1944.

See, also, 55 F.Supp. 156.

Moore & Mouzon, of Charleston, S. C., and Lloyd, Decker, Williams & Knauth, of New York City, for libellant, American Home Products Corporation and other Cargo Claimants.

Augustine T. Smythe, of Charleston, S. C., for libellant, A. K. Bertun, Master, and others.

Barnwell & Whaley, of Charleston, S. C., for libellant, Commercial Terminal & Warehouse.

Hagood, Rivers & Young, of Charleston, S. C., for Bankers Commercial Corporation.

Mitchell & Horlbeck, of Charleston, S. C., for various Cargo Claimants.

Buist & Buist, of Charleston, S. C., for Intercontinental Steamship Lines, Inc.

WARING, District Judge.

The Marshal heretofore filed a statement of his costs and expenses and by order filed February 5, 1944, I directed the payment of the amount as taxed. The proctors for Bankers Commercial Corporation, the holder of two mortgages under the Ship Mortgage Act, 46 U.S.C.A. § 911 et seq., and one of the libellants in this cause, had advised the Marshal that funds had been advanced by their client for payment of premiums of insurance covering Port Risks, Collision, Fire and General Average, the total premiums aggregating the sum of $680. They asked that this be added to and included in the Marshal's taxation. The matter was submitted to me. In the order above referred to I disallowed this item. Since then proctors for the mortgagee requested that I hear and reconsider the matter. I granted this request and all proctors in interest appeared before me and the matter was fully gone into. As directed by me the policy of insurance, or rather a true copy thereof was presented and filed with the court at this hearing.

It appears that this policy of insurance was taken out and the premiums advanced by the mortgagee during the period when the vessel was in the custody of the Marshal. The Marshal did not effect this insurance and did not know of it until after he had sold the vessel and was making up his costs when the mortgagee's representative called this matter to his attention and asked him to include this expense in his disbursements. Nor was the court advised of this matter until after the sale. No application was made to the court at any time while the vessel was in the custody of the court to cause insurance to be taken out or for leave to have the same done. The policy of insurance was never in the possession of the Marshal and neither he nor the court had any knowledge of its contents until the same was presented at the instant hearing.

This policy is now before me and I find that it is a policy in usual form issued by Lloyds of London in the sum of $80,000. Since the policy shows that the customary insurance on "three fourths" of the valuation is stricken out and "four fourths" substituted, it would appear that the amount of insurance, namely, the sum of $80,000 is the valuation agreed upon by the owner, mortgagee and insurer. The policy covers the Schooner "Herbert L. Rawding" and is issued to: "Intercontinental Steamship Lines, Inc., as Owners, and Bankers Commercial Corpn. as Mortgagee, with loss, if any, payable to Assured or order, as in-

terest may appear". It thus appears that this insurance was not taken out for the benefit of all concerned, but was the type of insurance policy commonly taken out by a mortgagee to cover its interest in the property under mortgage.

The only case that I have been able to locate, which seems to be directly on this point, is that of Burke v. The M. P. Rich, Fed.Cas.No.2162, 1 Cliff. 509. The opinion was rendered by Mr. Justice Clifford while sitting on Circuit in the District of Massachusetts and I am of the opinion that the judgment rendered by this justice of the United States Supreme Court and apparently not questioned or overruled since 1860 should be considered as the adopted settled rule in the admiralty courts. The case is well considered and well reasoned. Justice Clifford speaks of the equities of the case being with the libellant and this view of the matter apparently was based upon the fact that the cost of the insurance was paid by the Marshal. Even in that state of facts, however, he found that the law did not allow the approval of such disbursement and held that the Marshal was not warranted in taking out insurance. In the instant case the Marshal did not take out the insurance nor did he have any information or knowledge that such had been done. Suggestion has been made in argument that the Burke case was based upon the Statute of February 26, 1853, Revised Stat. § 829, 28 U.S.C.A. § 574. In such statute among the fees enumerated for the Marshal was the following: "For the necessary expenses of keeping boats, vessels, or other property attached or libeled in admiralty, not exceeding $2.50 a day."

It is pointed out that this statute was amended by Act of May 29, 1930, 28 U.S. C.A. § 574, and now reads: "For the necessary expenses of keeping boats, vessels, or other property attached or libeled in admiralty, such amount as the court, on petition setting forth the facts under oath, may allow."

It will be noted that the statute as amended provides for the expenses "on petition setting forth the facts under oath." In this case the Marshal has not petitioned for the payment of insurance and would have no basis to make such a petition under oath since he had no knowledge of the insurance and has never even seen the policy.

Several cases are cited wherein additional disbursements and costs were allowed for the preservation and safe-keeping of the vessel and an attempt is made to draw an analogy between these and insurance premiums. See The Perseverence, D. C., 22 F. 462; The St. Paul, 2 Cir., 271 F. 265; New York Dock Co. v. Steamship Poznan, 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955. The argument has been made that the decision in the case of Burke v. The M. P. Rich, supra, was bound by the rigid provisions of the old statute, but that these later cases show a more liberal view as to allowance of costs because of the amendment of the statute. This argument, however, overlooks the fact that all of the above-cited cases were decided prior to 1930 and at a time when the statute was the same as it had been when the Burke case was decided. As a matter of fact, the old statute is specifically referred to and discussed in the case of The Perseverence, supra.

In the presentation of this case proctors for the mortgagee compare this with the situation often arising in bankruptcy or in equity proceedings where a trustee or receiver has insured property in his custody. The rule in such cases seems to be that the custodian of the property is acting as an officer of the court and under its control and the court may authorize, or may subsequently approve, the action of such officer in insuring the property entrusted to his care. All such cases, however, are based upon the theory that an officer of the court must act properly and prudently and subject to the approval of the court and that his acts in preserving or protecting the property must be shown to have been advisedly done and for the benefit of all concerned. See Thompson v. Phoenix Insurance Co., 136 U.S. 287, 10 S.Ct. 1019, 34 L.Ed. 408; In re Vulcan Foundry & Machine Co., 3 Cir., 180 F. 671. But in the instant case the policy was not for the benefit of all concerned. The policy itself shows that it was taken out in the name of the owner and mortgagee and the mortgage debt being far in excess of the amount of the insurance it follows that the insurance would inure solely for the benefit of the mortgagee. If the ship had been destroyed by one of the causes named in the policy the mortgagee would have collected all of the proceeds.

It may be that a different conclusion would have been reached had the policy shown that it was issued for the benefit of all concerned and had the Marshal taken out this insurance or acquiesced in, or had the court known of, or authorized it. But

not a single one of these factors is present. The mortgagee, as well as the owner, had an insurable interest. Under the terms of its mortgage it had a right to effect insurance, which it did for its own benefit. The premiums paid for same are of course under the terms of its mortgage, secured by the mortgage, and may be added to and included in the mortgage debt and become a part of the debt, for which it held a maritime lien. See The John Jay, D.C., 15 F. Supp. 937. The insurance premiums, however, rank only with the lien of the mortgage and have no precedence over other liens which may have priority over the mortgage lien, and are not a part of the costs advanced to or paid by the Marshal.

For the foregoing reasons I shall refuse to amend or revoke the order heretofore issued or to allow the sum of $680 advanced for the payment of insurance premiums as above set forth as costs.

Accordingly, the order heretofore filed will remain as the conclusion and order of this court.

See also, 55 F.Supp. 171.