**MOON ENGINEERING COMPANY, Inc., Libellant,**

·v.

**THE S.S. VALIANT POWER et al., Respondents.**

No. 523.

United States District Court
E. D. Virginia,
Newport News Division.

Dec. 28, 1960.

Jett, Sykes & Coupland, Norfolk, Va., for Moon Engineering Co., Inc., et al.

Baird, Crenshaw & Lanning, Norfolk, Va., for V. Farboil Company et al.

David H. Batchelder, Jr., Norfolk, Va., for Société Algerienne Des Petrols Mory.

Ferguson, Yates & Stephens, Newport News, Va., for Seattle Packing Company, etc.

Kanter & Kanter, Norfolk, Va., for Porter Mechanical Co., Inc.

Vandeventer, Black, Meredith & Martin, Norfolk, Va., for Bailey Refrigeration of Baltimore, Inc., et al.

Fine, Fine, Legum & Schwan, Norfolk, Va., for Ange M. Panagopoulos.

Seawell, McCoy, Winston & Dalton, Norfolk, Va., for Coal Export Corp. et al.

Howell, Anninos & Daugherty, Norfolk, Va., for Mildred Kollough, Admx, etc., et al.

Steingold, Steingold, Chovitz & Boyce, Norfolk, Va., for Mackay Radio & Tel. Co., Inc.

Amato, Babalas, Breit & Cohen, Norfolk, Va., for John Houmis, etc.

Burt M. Morewitz, Newport News, Va., for Norman Compton.

Devany & Redfern, Norfolk, Va., for Joseph Kissel et al.

WALTER E. HOFFMAN, District Judge.

In the preliminary stages of this proceeding certain questions have arisen with respect to alleged preferential payments from the proceeds of the sale of the SS Valiant Power.

The vessel was arrested by the United States Marshal on December 31, 1959, while docked at the Chesapeake and Ohio Railway ore pier at Newport News, Virginia. After completion of discharge activities, it became necessary to remove the vessel from her berth. Accordingly, letters from various proctors addressed to the Marshal directed that the vessel could be moved from the pier to anchorage without expense to the Marshal, and saving the Marshal harmless from any damage by reason of this movement. The vessel was moved to anchorage and subsequently, on January 9, 1960, at the request of Ocean Carriers Corporation, the owner of said vessel, the ship was taken in tow by Curtis Bay Towing Company to a dock of the Imperial Tobacco Company in Norfolk. This latter movement from anchorage to the dock apparently was without the initial knowledge and consent of the Marshal. Thereafter, the Marshal learned of the docking of the vessel at Imperial and, after ascertaining the rate being charged, concluded that it would not be advantageous to again move the vessel to a slightly less expensive place because of the additional charge of again shifting the vessel.

The Court has heretofore ordered paid the berth charges of Imperial for the period of February 8, 1960, to April 17, 1960, aggregating $4160, covering the time when the dockage of the vessel was brought to the attention of the Court. There remains a charge of $1818.75 for the period from January 9, 1960, to February 8, 1960, which has been previously included in the bill of W. J. Browning,

ship's agent appointed by the Court, but which has not been paid by Browning to Imperial pending a determination of the rights of the parties. Likewise included in Browning's itemized bill is the sum of $400.95 claimed to be due to Curtis Bay Towing Company for its services in moving the vessel from anchorage to the Imperial dock, but payment has not yet been made by Browning to Curtis Bay.

Coal Export Corporation has requested preferential treatment for an expenditure of $911.75 covering port risk insurance for the period of January 23, 1960, to April 23, 1960, and port risk war insurance for the period beginning March 13, 1960, and ending June 14, 1960. These policies were taken without the knowledge and consent of the Marshal and the Marshal was not a named payee thereunder. Obviously this insurance was obtained for the purpose of protecting the alleged first preferred mortgage on the vessel.

From the foregoing it will be noted that each item was incurred while the vessel was in *custodia legis* and without the knowledge and approval of the Marshal or the Court. Are these claims, or any of them, now entitled to preferential payment?

Disposing of the claim for insurance premiums, we have no hesitancy in saying that this is not a matter for preferential payment, if, indeed, for payment as a general claim. Without reference to the authorities which seem to support this view, the matter of insurance coverage is for the Marshal or Court to determine. The extent of such coverage, if any, will be governed by the circumstances in each case. To permit the alleged holder of the first preferred mortgage to charge this cost to the cause as a preferential payment would subject the *res* to practically any charge sought to be incurred. Burke v. The M. P. Rich, C.C.D.Mass.1860, 4 Fed.Cas. 745, No. 2,-162; The Herbert L. Rawding, D.C., 55 F.Supp. 165. Unlike New York Dock Co. v. S.S. Poznan, 274 U.S. 117, 47 S.Ct. 482, 484, 71 L.Ed. 955, such payment of insur-

ance premiums cannot be held to be "for the common benefit of those interested in a fund administered by the court". Had a loss occurred, it is to be doubted whether coverage would be afforded an unnamed payee such as the Marshal.

The Poznan case stands for the principle that expenses which have contributed either to the preservation or creation of the fund in its custody shall be paid before a general distribution among those entitled to receive it. It is true that in Poznan the court pointed out that the denial of a motion to remove the ship from one wharf to another was tantamount to the approval of wharfage charges. We can, in this case, only look back to determine what this Court probably would have done with respect to the removal of the vessel from anchorage to dock, and the wharfage charges thereafter accrued. In all probability such expenses would have been authorized as a means of preserving the *res* pending sale of the vessel. While neither Imperial nor Curtis Bay had a maritime lien upon the vessel, they now have an equitable claim upon the fund.

There is some suggestion that Imperial's charges for wharfage were excessive. The mere fact that Imperial contracted with the owners for a rate of $60 per day is not in any manner controlling. The Marshal stated that this charge was slightly in excess of other charges, but the vessel was not ordered moved from Imperial because of the additional cost of shifting. Imperial should now be limited to the amount which would have been charged at the place or places investigated by the Marshal. If a further hearing is requested as to this phase of the case, the same will be granted.

An order will be entered denying the claim for preferential payment of insurance premiums, and allowing the claims of Curtis Bay Towing Company and Imperial Tobacco Company, the latter claim being subject to a further determination as to its reasonableness.